UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DEMATHUS TERRELL LEDET                    CIVIL ACTION NO. 6:13-cv-02101

VERSUS                                    JUDGE HAIK

COMMISSIONER OF THE                       MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT  AND  RECOMMENDATION

Before this Court is an appeal of the Commissioner's finding of non-disability.
Considering the administrative record, the briefs of the parties, and the applicable
law, it is recommended that the Commissioner's decision be reversed and remanded
for further consideration consistent with this report and recommendation.

### BACKGROUND

The claimant, Demathus Terrell Ledet, was born on January 2, 1983.[1]  He
graduated from high school and attended college for five years, playing football but
not earning a degree.[2]  He has experience working as a bus boy, a sales clerk, and
most recently a baker on an offshore oil and gas exploration or production facility.[3]

---

[1]     Rec. Doc. 7-1 at 110, 116.

[2]     Rec. Doc. 7-1 at 28, 36.

[3]     Rec. Doc. 7-1 at 140.

On October 6, 2010,[4] Mr. Ledet sought treatment in the emergency room of Lafayette General Hospital, complaining of vertigo.  He was prescribed Meclizine and was advised to get some rest and follow up with his physician.

On September 5, 2011,[5] he sought treatment at University Medical Center in Lafayette, Louisiana, complaining of diminished hearing in his left ear with facial paresthesia for three days along with intermittent chest pain over the preceding three years but no current chest pain.  He was advised to see a cardiologist.

The very next day, September 6, 2011,[6] he sought treatment at the emergency room of Lafayette General Hospital.  He complained of numbness on the left side of his body, decreased sensation on the left side of his face, chest pain, depression, and anxiety.  A CT scan of his brain was negative.[7]  An angiogram of the brain was performed in order to rule out cerebral aneurysm.  It showed focal stenosis of the proximal A2 segment of the right anterior cerebral artery.[8]  An MRI of his brain

---

[4]     Rec. Doc. 7-1 at 198-301.

[5]     Rec. Doc. 7-1 at 209-214.

[6]     Rec. Doc. 7-1 at 190-193.

[7]     Rec. Doc. 7-1 at 194.

[8]     Rec. Doc. 7-1 at 195.

showed multifocal bilateral deep white matter disease consistent with demyelination.[9] He was released with instructions to see a neurologist.[10]

A week later, on September 13, 2011,[11] Mr. Ledet returned to the emergency room at University Medical Center, complaining of left-sided facial numbness, left-sided hearing loss, and dizziness that all started approximately one week earlier.  He reported that he had been seen for those symptoms a week earlier and discharged home.  He also reported that he had been seen at Lafayette General and that testing done there indicated that he might have multiple sclerosis ("MS").  It was noted that he was not exhibiting any neurological symptoms at the time.  The physician's clinical impressions were vertigo and possible MS.  He was released from the hospital with a referral to a neurologist.

On January 12, 2012,[12] Mr. Ledet was seen at Lafayette General for a frontal headache with nasal congestion and drainage.  He was prescribed medication and advised to follow up at University Medical Center.

---

[9]     Rec. Doc. 7-1 at 196.

[10]    Rec. Doc. 7-1 at 193.

[11]    Rec. Doc. 7-1 at 203-208.

[12]    Rec. Doc. 7-1 at 278-280.

On February 8, 2012, Mr. Ledet sought treatment at University Medical Center.[13]  His chief complaint was headaches.  A CT scan of his brain was within normal limits.  An appointment was made for him to see a neurologist.

On June 27, 2012, Mr. Ledet was seen at both University Medical Center[14] and Lafayette General.[15]  At UMC he complained of numbness and tingling of the arms and legs, visual disturbances, and generalized weakness.  He reported that he had been evaluated in the neurology clinic and told that he might have MS, but no treatment was provided.  The clinical impression was anxiety and chest wall pain.  At Lafayette General, he complained of episodic tingling and numbness but no current symptoms.  He was referred to a neurologist.

Diagnostic testing was performed at UMC on July 20, 2012.[16]  The hospital's records indicate that Mr. Ledet was diagnosed with multiple sclerosis on that date and that he was seen with regard to that diagnosis on August 14, August 21, August 28, September 4, and September 11, 2012.[17]  However, the record does not contain

---

[13]    Rec. Doc. 7-1 at 218, 224-225, 233.

[14]    Rec. Doc. 7-1 at 226-228.

[15]    Rec. Doc. 7-1 at 274-277.

[16]    Rec. Doc. 7-1 at 219-223.

[17]    Rec. Doc. 7-1 at 265.

treatment notes from any of those dates.  The records do show, however, that Mr. Ledet was prescribed Gabapentin and Avonex at UMC on July 20, 2012.[18]

On March 11, 2013, a cervical MRI was performed at Lourdes Imaging Network, which showed findings consistent with MS with lesions identified in the lower portion of the medulla posteriorly and abnormal signal below the C-3 level in a diffuse fashion within the cervical spinal cord.[19]  An MRI of the brain from the same date indicated progression of Mr. Ledet's MS with an increased number of foci in both hemispheres as well as in the left basal ganglia, pontine lesions and a suspected lesion at the cervicomedullary junction, and a plaque adjacent to the left lateral ventricle consistent with active demyelination.[20]

On March 21, 2013, Mr. Ledet saw Dr. Steven J. Snatic, a neurologist at Our Lady of Lourdes Neurology Center in Lafayette, Louisiana.[21]  Mr. Ledet gave a history of his symptoms beginning in 2010 when he woke up with the entire left side of his body numb, which he said went away after about six to seven months.  He reported that in late 2010, he woke up with a headache, dizziness, vertigo, nausea,

---

[18]    Rec. Doc. 7-1 at 253.

[19]    Rec. Doc. 7-1 at 303.

[20]    Rec. Doc. 7-1 at 301-302.

[21]    Rec. Doc. 7-1 at 304-307.

and blurred vision that lasted for about four to five months.  He explained that an MRI in 2011 showed lesions on his brain and that he began taking Avonex after that incident.  He stated that the Avonex caused debilitating headaches, which gradually decreased in severity.  He also reported that, in April 2012, he went numb all over, lost bladder control, and experienced a "pins and needles" sensation.  Dr. Snatic took him off the Avonex and replaced it with Prednisone, maintained him on Gabapentin for tingling, and prescribed three medications for headaches.  Dr. Snatic's impression was that Mr. Ledet probably has MS.

On September 15, 2011, at the age of twenty-eight, Mr. Ledet applied for disability insurance benefits and also for supplemental security income, alleging a disability onset date of December 15, 2010.[22]  Contemporaneous reports indicate that the condition allegedly limiting his ability to work is multiple sclerosis.[23]

In October 2011, it was determined that Mr. Ledet is not disabled.[24]  He then requested a hearing,[25] which was held on November 5, 2012 before Administrative Law Judge ("ALJ") Carol Latham.[26]

---

[22]    Rec. Doc. 7-1 at 110, 116.

[23]    Rec. Doc. 7-1 at 70, 77.

[24]    Rec. Doc. 7-1 at 46, 47.

[25]    Rec. Doc. 7-1 at 66.

[26]    A transcript of the hearing is found in the record at Rec. Doc. 7-1 at 24-45.

The ALJ issued an unfavorable ruling on January 25, 2013.[27]  Mr. Ledet requested review by the Appeals Council,[28] and he submitted additional medical records to the Appeals Council,[29] but the Appeals Council denied his request.[30] Therefore, the ALJ's ruling is the Commissioner's final decision.  In June 2013, Mr. Ledet instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[31]  Mr. Ledet now argues that the Commissioner erred in failing to find that he is disabled.

## ASSIGNMENT OF ERRORS

Mr. Ledet argues that the Commissioner's ruling is flawed because the ALJ erred in two ways:  (1) by failing to conduct a function-by-function evaluation of his ability to perform each exertional function prior to assessing his residual functional capacity; and (2) by failing to provide specific reasons in support of her credibility determination.

## STANDARD OF REVIEW

---

[27]     Rec. Doc. 7-1 at 12-18.

[28]     Rec. Doc. 7-1 at 7.

[29]     Rec. Doc. 7-1 at 294-307.

[30]     Rec. Doc. 7-1 at 4.

[31]     Rec. Doc. 1.

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper legal standards were applied in reaching the decision.[32]   If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[33]  Substantial evidence is more than a mere scintilla and less than a preponderance.[34]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[35]   Finding substantial evidence requires scrutiny of the entire record as a whole.[36]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[37]

The Social Security Act provides for the payment of Disability Insurance Benefits to individuals who have contributed to the program and who suffer from a disability, which is defined as the "inability to engage in any substantial gainful

---

[32]      See, e.g., *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[33]      42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995), citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

[34]      See, e.g., *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

[35]      *Boyd v. Apfel,* 239 F.3d at 704; *Hames v. Heckler*, 707 F.2d at 343-44.

[36]      *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[37]      *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135; *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ."[38]  Substantial gainful activity is defined as work activity that involves doing significant physical or mental activities for pay or profit.[39]  The Act also provides for the payment of Supplemental Security Income to those who are disabled under the foregoing definition and satisfy applicable resource limits.[40]  In this case, Mr. Ledet has sought both disability insurance benefits and SSI benefits.

Pursuant to the Act, the Commissioner promulgated regulations establishing a five-step sequential evaluation process for determining whether an individual is disabled.[41]  At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.  At step two, an individual who does not have a severe impairment will not be found disabled. At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled

---

[38]     42 U.S.C. § 423(d)(1)(A).

[39]     20 C.F.R. § 404.1572.

[40]     42 U.S.C. § 1381, *et seq*.

[41]     20 C.F.R. §404.1520, 416.920.

without consideration of vocational factors.  If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[42]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[43] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[44]  The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[45]

---

[42]     See, e.g., *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f).  See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

[43]     20 C.F.R. § 404.1520(a)(4).

[44]     20 C.F.R. § 404.1545(a)(1).

[45]     20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps.[46]  At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[47]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[48]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[49]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[50]

In this case, the Commissioner found, at step one, that Mr. Ledet has not engaged in substantial gainful activity since December 15, 2010, the alleged onset date of his medical condition.[51]  That finding is supported by evidence in the record.

---

[46]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[47]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[48]      *Fraga v. Bowen*, 810 F.2d at 1304.

[49]      *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[50]      *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988).  See, also, 20 C.F.R. § 404.1520(a)(4).

[51]      Rec. Doc. 7-1 at 14.

At step two, the ALJ found that Mr. Ledet has the following severe impairment:  multiple sclerosis.[52]  This finding is also supported by evidence in the record.

At step three, the ALJ found that Mr. Ledet does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[53]  Mr. Ledet does not dispute this finding.

At the next step of the process, the ALJ found that Mr. Ledet retains the residual functional capacity to perform the full range of medium work.[54]  At step four, the ALJ found that Mr. Ledet is able to perform his last relevant work as a baker.[55]  Consequently, the ALJ concluded at step four that Mr. Ledet is not disabled, and she did not proceed any further with the sequential analysis.  Mr. Ledet disputes the ALJ's conclusion.

## DISCUSSION

Both of Mr. Ledet's assignments of error center on the ALJ's alleged lack of compliance with Social Security rulings.  The Fifth Circuit has determined that the

---

[52]     Rec. Doc. 7-1 at 14.

[53]     Rec. Doc. 7-1 at 15.

[54]     Rec. Doc. 7-1 at 15.

[55]     Rec. Doc. 7-1 at 17.

Social Security Administration's rulings are not binding on the court, but they may be consulted when the statute at issue provides little guidance, and the Fifth Circuit has frequently relied upon the rulings in evaluating ALJs' decisions.[56]

## (1)   DID THE ALJ ERR IN FAILING TO CONDUCT A MORE DETAILED EVALUATION OF MR. LEDET'S RESIDUAL FUNCTIONAL CAPACITY?

The sequential analysis prescribed by the Social Security regulations requires an ALJ to evaluate a claimant's residual functional capacity, which is "a term of art defined as 'the most you can still do despite your limitations.'"[57]  The responsibility for determining a claimant's residual functional capacity lies with the ALJ.[58]  In making this determination, the ALJ must comply with Social Security Ruling ("SSR") 96–8p, which states that an evaluation of residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  As the Fifth Circuit has explained, the term "regular and continuing basis" means eight hours per day, five days per week, or a suitable equivalent; the residual functional capacity assessment

---

[56]        *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), citing *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000) (relying on SSR 96–2p); *Scott v. Shalala*, 30 F.3d 33, 34 (5th Cir. 1994) (relying on SSR 83–12); *Spellman v. Shalala*, 1 F.3d 357, 362 (5th Cir. 1993) (relying on SSR 83–20).

[57]        *Johnson v. Astrue*, 291 Fed. App'x 548, 550 (5th Cir. 2008), citing 20 C.F.R. § 404.1545(a)(1); *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).

[58]        20 C.F.R. § 404.1546; *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995).

is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities; it involves both exertional and nonexertional factors; and exertional capacity involves seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling, each of which must be considered separately.[59]

In this case, the ALJ concluded that Mr. Ledet retains the functional capacity to perform medium work.  Mr. Ledet argues, however, that the ALJ erred because she reached that conclusion without first evaluating his ability to perform each exertional function, as required by SSR 96–8p.  When making a residual functional capacity determination, the ALJ must consider objective medical facts, diagnoses and medical opinion based on such facts, and subjective evidence of pain or disability testified to by the claimant or others.[60]  Moreover, the ALJ must specify the evidentiary basis for her residual functional capacity determination.[61]  To satisfy the requirements of SSR 96–8p, the ALJ must either engage in an explicit function-by-function analysis or consider a state disability examiner's analysis of each required function.[62]

---

[59]     *Myers v. Apfel*, 238 F.3d at 620.

[60]     20 C.F.R. § 404.1545(a).

[61]     SSR 96–8p; *Myers v. Apfel*, 238 F.3d at 620.

[62]     *Onishea v. Barnhart*, 116 Fed. App'x 1, 2 (5th Cir. 2004).  See, also, *Beck v. Barnhart*, 205 Fed. App'x 207, 213–14 (5th Cir. 2006).

Here, the ALJ did not articulate an explicit function-by-function analysis. Instead, in conclusory fashion, she stated that "the evidence does not show limitations that would preclude the performance of medium, light, and sedentary work."[63]  If this conclusion was based on the state disability examiner's function-by-function analysis, the ALJ did not say so.  Furthermore, the state disability examiner made a grave error in this case, which is so significant that it calls all of her conclusions into question. She concluded that the doctor who examined Mr. Ledet on September 13, 2011 ruled out MS, stating "Multiple Scerosis [sic] was ruled out."[64]  But that doctor's clinical impressions actually included "[p]ossible MS."[65]  The state disability examiner also failed to appreciate the results of Mr. Ledet's MRI of September 7, 2011, despite noting that this test was performed.  The MRI revealed multifocal bilateral deep white matter disease consistent with demyelination.[66]  Demyelination occurs in MS patients; in fact, MS is the most common demyelinating disease.[67]  Thus, the MRI did not rule out MS; it was consistent with a diagnosis of MS.  This is such a significant error that

---

[63]     Rec. Doc. 7-1 at 17.

[64]     Rec. Doc. 7-1 at 58.

[65]     Rec. Doc. 7-1 at 232.

[66]     Rec. Doc. 7-1 at 196.

[67]     Healthline, http://www.healthline.com/health-slideshow/demyelination#9 (last visited Aug. 18, 2014).

any reliance by the ALJ on the state disability examiner's conclusions would be misplaced.

To her credit, the ALJ recognized that Mr. Ledet had, in fact, undergone testing that confirmed the existence of a brain condition consistent with MS, and she found that he has MS and that it is a severe impairment.[68]  But the ALJ failed to evaluate Mr. Ledet's functional capacity using a function-by-function analysis.  For example, the ALJ did not address how Mr. Ledet's complaints of numbness in his hands might affect his ability to carry, lift, push, or pull.   "By not employing a function-by-function analysis, required by SSR 96–8p, the ALJ engaged in a flawed methodology, thereby tainting [her] decision to deny. . . benefits."[69]

However, "[p]rocedural perfection in administrative proceedings is not required."[70]  Therefore, a court "will not vacate a judgment unless the substantial rights of a party are affected,"[71] and a case should be remanded for failure of the ALJ to comply with a Social Security ruling only when a complainant affirmatively

---

[68]     Rec. Doc. 7-1 at 14.

[69]     *Ivey v. Barnhart*, No. 3:00-CV-2544-P, 2001 WL 34043389, at *4 (N.D. Tex. Jan. 15, 2002).

[70]     *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Taylor v. Astrue*, 706 F.3d at 603.

[71]     *Mays v. Brown*, 837 F.2d at 1364.

demonstrates that he was prejudiced by that failure.[72]   Errors are considered prejudicial when they "cast doubt onto the existence of substantial evidence to support the ALJ's decision."[73]

In this case, the record is devoid of a functional analysis performed by any physician who has treated Mr. Ledet since he began exhibiting symptoms of MS in 2010, and the ALJ did not obtain a consultative examination.  Mr. Ledet testified at the hearing that he has had periods of time since then in which he has experienced the following array of symptoms:  numbness over the entire left side of his body, numbness in his hands, dizziness, lightheadedness, blurred vision, hearing loss, the inability to walk in a straight line, nausea, headaches, chest pains, and pain in his legs and feet.[74]   He testified that activity and sweating worsen his headaches and lightheadedness.[75]   He also testified that the symptoms have been so severe that he used a wheelchair[76] for a period of months and has completely stopped driving.[77]   He stated that his symptoms are episodic, lasting for a period of months and then

---

[72]   *Bornette v. Barnhart*, 466 F.Supp.2d at 816.

[73]   *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988).

[74]   Rec. Doc. 7-1 at 27-30, 43.

[75]   Rec. Doc. 7-1 at 32.

[76]   Rec. Doc. 7-1 at 29.

[77]   Rec. Doc. 7-1 at 35.

resolving.[78] But nothing in the record correlates these alleged functional deficiencies to his MS diagnosis nor does the record contain a physician's opinion concerning Mr. Ledet's functionality.

"[I]n the absence of any valid medical assessment or other corroborating evidence to support the ALJ's residual functional capacity determination, the court is constrained to find that the ALJ's assessment is not supported by substantial evidence."[79] An ALJ is not permitted to rely upon his own unsupported opinion as to the limitations presented by the applicant's medical conditions.[80] Therefore, when there is no medical assessment of the claimant's residual functional capacity in the record, substantial evidence is lacking.[81]  In such a situation, when there is insufficient evidence to reach a conclusion concerning the claimant's residual functional capacity, the ALJ has the authority to request a consultative examination.[82] Indeed, a consultative examination is, "normally require[d]" when additional evidence beyond that contained in the provided medical records is needed and when

---

[78]      Rec. Doc. 7-1 at 27, 29, 37.

[79]      *Coleman v. Astrue*, No. 09-0759, 2010 WL 3257621, at *4 (W.D. La. July 21,2010), report and recommendation adopted, No. 09-0759, 2010 WL 3245126 (W.D. La. Aug. 16, 2010).

[80]      See *Williams v. Astrue*, 355 Fed. App'x 828, 832 (5th Cir. 2009).

[81]      *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir. 1995); *Butler v. Barnhart*, 99 Fed. App'x 559, 560 (5th Cir. 2004).

[82]      20 C.F.R. § 404.1517.

-18-

there is a "conflict, inconsistency, ambiguity, or insufficiency" in the medical evidence.[83]  In this case, however, the ALJ simply fashioned a residual functional capacity determination based on her own interpretation of Mr. Ledet's testimony, with no input from any medical source.  This was prejudicial error that mandates remand of this matter for further consideration.

**(2)**    **D**ID THE **ALJ E**RR IN **F**AILING TO **P**ROVIDE **S**PECIFIC **R**EASONS IN **S**UPPORT OF THE **C**REDIBILITY **D**ETERMINATION**?**

The ALJ is tasked with evaluating the claimant's credibility, and the ALJ's findings regarding the credibility of subjective symptom testimony is entitled to considerable judicial deference.[84]  However, such deference is owed only if the ALJ's "evaluation of the credibility of subjective complaints is . . . supported by substantial evidence in the record."[85]  In this case, substantial evidence does not support the ALJ's credibility determination.

When a claimant has been found to have a medically determinable impairment that could reasonably be expected to produce the symptoms he has alleged, SSR 96-7p requires an ALJ to evaluate the intensity, persistence, and functionally limiting

---

[83]    *Carrillo v. Astrue*, No. A-08-CA-774-SS, 2009 WL 4667122, at *24 (W.D. Tex. Nov. 30, 2009); 20 C.F.R. § 404.1519a(b)(1).

[84]    *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d at 459; *Scott v. Shalala*, 30 F.3d 33, 35 n. 2 (5th Cir. 1994).

[85]    *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

effects of the claimant's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities.  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."[86]  However,

> [i]t is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision ***must contain specific reasons*** for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[87]

Mr. Ledet argues that the ALJ erred by failing to articulate specific reasons for rejecting his subjective testimony regarding his functional impairments, and the undersigned agrees.  In evaluating Mr. Ledet's credibility, the ALJ said this:

> The claimant's subjective allegations are consistent[,] and the objective medical record documents the presence of a severe impairment that could reasonably be expected to produce the claimant's reported symptoms.  However, the claimed level of intensity, persistence[,] and functionally limiting effects of these symptoms are not well supported

---

[86]    SSR 96-7p(2).

[87]    SSR 96-7(5) (emphasis added).

-20-

by the current clinical findings or the longitudinal medical evidence.   Overall, *the allegations are found to be partially credible*.[88]

The ALJ did not explain which part of Mr. Ledet's allegations were found credible and which were not.  Therefore, the ALJ did not comply with the strictures of SSR 96-7p.

      As noted above, however, there is no medical opinion in the record concerning the effects that Mr. Ledet's MS is having on his functionality; therefore, the ALJ had nothing with which to compare Mr. Ledet's allegations.  In other words, the record contains no evidence against which Mr. Ledet's functional allegations can be weighed.  Consequently, the ALJ's conclusion about credibility was based solely on her own evaluation of Mr. Ledet's testimony at the hearing.  This is a situation in which the ALJ needed additional information in order to accurately evaluate the claimant's credibility.  SSR 96–7p requires the ALJ to "make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements."  Thus, the ALJ erred by failing to have a consulting examiner evaluate Mr. Ledet's impairments and functionality before evaluating his credibility.  This error warrants remand of this matter.

---

[88]     Rec. Doc. 7-1 at 17 (emphasis added).

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Mr. Ledet is not disabled was not reached by the application of the proper legal standards since the ALJ failed to comply with applicable Social Security Administration rulings when evaluating Mr. Ledet's residual functional capacity and credibility.  This resulted in findings that are not supported by substantial evidence.  Accordingly,

**IT IS RECOMMENDED** that the decision of the Commissioner be **REVERSED AND REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g).  More particularly, the undersigned recommends that the remand include, without limitation, sending the case to the hearing level with instructions to the Administrative Law Judge to (1) have Mr. Ledet examined by a consultative physician who is knowledgeable about multiple sclerosis and its effects, (2) order updated records and functional evaluations from Mr. Ledet's treating physicians, and (3) determine whether Mr. Ledet retains the residual functional capacity to perform any type of work.  It is further recommended that the claimant be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 20th day of August 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE:  __8/21/2014__
BY:  _____EFA_____
TO:  _____RTH_____
         pj

-23-